IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

PATRICIA ELLIS,                          )        Civil Action No. 3:07-3996-CMC-JRM
                                         )
                    Plaintiff,           )
                                         )
            v.                           )    **REPORT AND RECOMMENDATION**
                                         )
MICHAEL J. ASTRUE,                       )
COMMISSIONER OF SOCIAL SECURITY, )
                                         )
                    Defendant.           )
_____  )

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning

the disposition of Social Security cases in this District.  Plaintiff brought this action pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner

of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI")

and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On April 21, 2003, Plaintiff applied for SSI and for DIB.  Plaintiff's applications were denied

initially and on reconsideration, and she requested a hearing before an administrative law judge

("ALJ").  After a hearing held July 26, 2006, at which Plaintiff appeared and testified, the ALJ issued

a decision dated January 10, 2007, denying benefits and finding that Plaintiff was not disabled

because she could perform her past relevant work as a food service line worker.  At the hearing, a

vocational expert ("VE") testified.

Plaintiff was forty-five years old at the time of the ALJ's decision.  She has a ninth grade

education and past relevant work as a cashier and food service line supervisor and operator.  Plaintiff

alleges disability since April 20, 2002, due to seizures, diabetes, diabetic neuropathy, back pain,

cervical and lumbar radiculopathy, obstructive sleep apnea, obesity, and drowsiness from medications. See Plaintiff's Brief at 3..

The ALJ found (Tr. 18-22):

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since April 20, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: seizure disorder and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for six hours of an eight hour workday; she can sit for six hours of an eight hour workday; she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and she must avoid even moderate exposure to hazards such as machinery and unprotected heights.

6. The claimant is capable of performing past relevant work as a food service worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from April 20, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On October 11, 2007, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on December 12, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." <u>See</u> 20 C.F.R. § 404.1505(a) and <u>Blalock v. Richardson</u>, <u>supra</u>.

## DISCUSSION

On April 20, 2002, Plaintiff's alleged onset of disability date, she was treated in the emergency room for complaints of seizures with urinary incontinence the night before. Dr. Angie L. Mills noted that Plaintiff had left-sided weakness, decreased oxygen saturation, and elevated blood glucose level, without a history of diabetes. Plaintiff was admitted to the hospital and treated with Dilantin (an anti-convulsant) and Glucotrol (for diabetes). An MRI revealed no etiology for Plaintiff's seizures and her left-sided weakness resolved. Tr. 188-196.

On July 2, 2002, Plaintiff reported to Dr. Benjamin R. Millar that she had not had a definite seizure since late April. Tr. 296. Dr. Millar opined that Plaintiff's seizures were stable on Carbatrol, she should avoid driving, and she could likely return to work. Tr. 296. At an annual examination

3

at the Greenville Hospital System Medical Center Clinic on July 29, 2002, Plaintiff denied any complaints. Tr. 474-475. Dr. Millar's treatment notes from August 21, 2002 indicate that Plaintiff reported two seizures, but was not taking her Carbatrol as prescribed. Dr. Millar opined that Plaintiff was stable on Carbatrol. Tr. 295. In October 2002, Dr. Millar noted that Plaintiff reported two seizures that were not witnessed. He wrote that Plaintiff had apparently misunderstood her medication instructions and took less medication than what was prescribed. Dr. Millar's impression was "idiopathic complex partial epilepsy probably under treated on [] Carbatrol." Tr. 293-294.

In November 2002, it was noted at the Greenville Hospital System Center for Family Medicine ("Family Medicine") that Plaintiff denied having any seizure activity. Tr. 470. In December 2002, Plaintiff reported to Dr. Millar that she had no further seizures since October 2002 and Dr. Millar wrote that Plaintiff's seizures were stable on Carbatrol. Tr. 291-292.

At a March 26, 2003 appointment at Family Medicine, Plaintiff complained of approximately three to four months of intermittent dizziness without loss of consciousness. Tr. 467. In April 2003, it was noted that test results were within normal limits and Plaintiff reported a seizure the previous week which was being investigated by her neurologist. Tr. 465. On September 2, 2003, Plaintiff reported to Family Medicine that she had a seizure that morning. It was noted that Plaintiff was in no acute distress, she was fully oriented, her cranial nerves were intact, her motor strength was 5/5 in the upper and lower extremities, and her gait was steady. Tr. 460.

Dr. Arthur L. Smith, a neurologist, began treating Plaintiff on February 23, 2004. Plaintiff reported she had a seizure on February 4, 2004. Examination revealed that Plaintiff's neurological and musculoskeletal systems were within normal limits. Tr. 530-531. An EEG in February 2004, recorded during wakefulness and sleep, was within normal limits. Tr. 527. Dr. Smith noted on

4

March 11, 2004 that Plaintiff was doing well. Tr. 525. In March 2003, a sleep study yielded diagnoses of hypersomnia with sleep apnea, restless leg syndrome, cataplexy, and narcolepsy. She was prescribed a CPAP machine. Plaintiff's EEG and brain MRI were unremarkable. Tr. 520-522, 527, 534-536. Her neurological and musculoskeletal systems were within normal limits on April 13, 2004. Tr. 536. At an appointment on May 7, 2004, Plaintiff reported that she had a seizure on April 29, 2004. Tr. 539.

Notes from Family Medicine on June 16, 2004, indicate that Plaintiff's diabetes was out of control and Plaintiff reported having a seizure approximately one to weeks before, even though her Dilantin level was therapeutic. She was started on insulin. Tr. 455.

On July 28, 2004, Dr. Frank K. Ferrell, a State agency medical consultant, reviewed Plaintiff's records and completed a physical residual functional capacity assessment form. Tr. 414-421. Dr. Ferrell opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and push and/or pull without limitations. He further opined that Plaintiff could occasionally climb ladders, climb ropes, climb scaffolds, balance, stoop, kneel, crouch, and crawl; had no manipulative, visual, or communicative limitations; and should avoid hazards such as machinery and heights due to safety issues. Dr. Ferrell noted that his limitations were supported by Plaintiff's level III obesity (based on Plaintiff's height of 4' 9", weight of 210 pounds, and BMI of 42.5). Tr. 414-421.

Plaintiff was examined at Dr. Smith's office on October 27, 2004, after being discharged from the hospital two days prior. Plaintiff had been admitted to the hospital for seizure activity due to her noncompliance with her medications. During her hospitalization, Plaintiff's Dilantin level was in

5

the therapeutic range, her blood glucose levels were high, and her hypertension remained stable.  Tr. 451.  She was discharged on October 29, 2004.  Tr. 448, 451, 562.

Dr. Smith wrote that nerve studies in 2004[1] revealed that Plaintiff had findings consistent with C7, C8, T1 level spinal root vs. a sensory neuropathy involving the ulnar nerves.  Tr. 441-443.  On December 7, 2004, Dr. Smith noted that Plaintiff had complaints of numbness and tingling in both her legs for approximately three months.  He found that nerve conduction findings were  abnormal and were "consistent with right L4-L5 sacral level spinal injury versus a motor neuropathy involving the right peroneal nerve.  This is compatible with the patient's history of diabetes mellitus and is probably secondary to diabetic neuropathy."  Tr. 573, see also Tr. 513.

An MRI on December 7, 2004 revealed findings suspicious for epidermoid lesion in Plaintiff's right cerebellar pontine angle cistern centered superior to the porus acusticus.  A CT scan on December 28, 2004, indicated that this was probably a non-mass effect producing lesions consistent with an epidermoidoma.  Tr. 569, 574.  Smith noted on December 8, 2004, that Plaintiff had impaired coordination with dysmetric finger-to-nose testing and difficulty concentrating.  Tr. 615.

In January 2005, Plaintiff was treated at Family Medicine.  She reported that her most recent seizure was one week earlier and she had pain in her left arm and leg.  Tr. 553-554.  On January 25, 2005, Plaintiff was admitted to the hospital for a continuous EEG monitoring.  Plaintiff reported that she had seizures on January 1 and 4, 2005 despite compliance with Dilantin and Keppra.  Physical examination was unremarkable with the exception of obesity.  Dilantin and Kepra were not given and

---

[1]The date of this study is partially obscured, but it is clear that the study was done in 2004.

Plaintiff reported only one seizure on January 27, 2005. On January 28, 2005, the EEG monitoring was discontinued and Plaintiff was discharged. Tr. 562, 566-567.

In February 2005, Dr. Smith completed a "Seizure Residual Functional Capacity Questionnaire" form. He opined that Plaintiff had partial generalized seizures on an average of three times per week which lasted approximately one to two minutes each. Dr. Smith indicated that there were no precipitating factors, Plaintiff could not always take safety precautions before a seizures, the seizures interfered with her daily activities and were likely to disrupt the work of co-workers, she should not work at heights, around power machines, drive, or take a bus alone. He opined that Plaintiff would need to take unscheduled breaks during an eight-hour workday, about three times a week, for approximately one to two hours to sleep. Dr. Smith also noted that Plaintiff was compliant with her medical regimen. Tr. 541-543.

On March 3, 2005, Plaintiff reported no seizures since January. Dr. Smith noted that Plaintiff continued to have difficulty concentrating and difficulty with coordination. Tr. 606-608. In March 2005 Plaintiff was examined at Family Medicine for complaints of feeling shaky and having blood sugar levels ranging from 200 to 300. Insulin and Actos were prescribed for her diabetes. Tr. 548. In April 2005, Plaintiff reported to Dr. Smith that she had a seizure that lasted thirty minutes and left her unable to talk for two days. Tr. 605. On June 13, 2005, a physician at Family Medicine increased Plaintiff's insulin levels, but Plaintiff noted that she could not afford to increase the dose. Tr. 545-546. Plaintiff was treated in the emergency room in October 2005 for neck pain. Tr. 561.

On January 10, 2006, Plaintiff was treated at the Greenville Free Clinic for arm and leg pain. On February 9, 2006, she reported having two seizures since January 10. Her compliance was questioned and it was uncertain if her glucose levels were stable. Tr. 619.

7

Plaintiff alleges that: (1) the ALJ failed to consider many significant findings in determining her severe impairments, evaluating her combination of impairments, determining her residual functional capacity ("RFC"), and posing the hypothetical to the VE; (2) the ALJ failed to consider the effects of Plaintiff's obesity in combination with her other impairments; (3) the ALJ improperly rejected the opinion of Plaintiff's treating physician; and (4) the ALJ improperly evaluated Plaintiff's credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

## A.    Substantial Evidence/RFC

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and correct under controlling law because he failed to fully consider all of her impairments. She claims that the ALJ did not consider all of her impairments including her cervical and lumbar pain with radiculopathy, diabetic neuropathy, obesity, degenerative joint disease, obstructive sleep apnea, extremity pain, difficulty concentrating, and poor memory. In particular, Plaintiff claims that the ALJ failed to properly analyze her obesity under SSR 02-1p.[2]   She argues that the ALJ failed to properly determine her RFC and to pose a proper hypothetical to the VE because he failed to properly account for the limitations of her seizure disorder and diabetes.

Substantial evidence is:

---

[2]Pursuant to SSR 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-1p, 2000 WL 628049, at *3 and *6.

8

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Here, the ALJ failed to properly consider all of Plaintiff's impairments and thus appears to not have considered all of these impairments in determining Plaintiff's RFC. An "ALJ is not required to discuss all the evidence submitted" and "an ALJ's failure to cite specific evidence does not indicate that it was not considered." Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Here, however, it appears that the ALJ erred by failing to consider much of the later medical evidence (specifically not discussing any medical evidence after February 2005). He does not appear to have considered nerve testing indicating possible radiculopathy or neuropathy (see Tr. 441-443, 573). The ALJ states that he has attached significant weight to the medical reports and opinion of Dr. Ferrell. Tr. 21. Contrary to this statement, the ALJ never discussed Plaintiff's impairment of obesity or even mentioned her weight and height in his opinion. Dr. Ferrell stated he based his limitations on Plaintiff's obesity. Further, the ALJ did not evaluate Plaintiff's obesity under SSR 02-1p.

The Commissioner, citing Sullins v. Shalala,, 25 F.3d 601 (8th Cir. 1994) contends that the ALJ was not required to consider Plaintiff's obesity or neuropathy and/or radiculopathy because she did not list this impairment on her application. In Sullins, the Eighth Circuit found that the ALJ did not err in not including limitations from an alleged mental impairment in his hypothetical to the VE because Plaintiff presented no evidence that she suffered from a disabling mental impairment prior

9

to her last date insured, there was no evidence she received treatment for a psychiatric impairment, she did not allege a disabling mental impairment in her application for disability benefits, and she did not offer such an impairment as a basis of disability at her hearing.   Sullins, 25 F.3d at 604. Here, however, Plaintiff's weight and height were discussed at the hearing, there is consistent medical evidence of obesity, and Dr. Ferrell found that Plaintiff had level III obesity that supported the limitations he found on her ability to work.   There is also medical evidence of possible neuropathy or radiculopathy.

### B.     __Treating Physician__

Plaintiff alleges that the ALJ erred in discounting Dr. Smith's opinion because he failed to evaluate all of the factors in 20 C.F.R. § 404.1527,[3] the ALJ should not have discounted the opinion simply on the basis that Plaintiff did not go to the emergency room every time she had a seizure, he erred in relying solely on the opinion of a non-examining physician, and even if the opinion is not entitled to controlling weight it was entitled to greatest weight.  The Commissioner argues that the ALJ properly discounted Dr. Smith's opinion because it was not supported by his treatment notes.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician.

---

[3]These factors include: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.  20 C.F.R. § 404.1527(d).

See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Here, the ALJ discounted Dr. Smith's February 2005 opinion because he found that the number and frequency of seizures experienced by Plaintiff was not supported by Dr. Smith's notes or Plaintiff's visits to the emergency room and appeared to be based largely on Plaintiff's subjective reports. The ALJ also suggests that the episodes may instead be due to variations in Plaintiff's blood sugar levels. Although the ALJ has discounted Dr. Smith's opinion as to the number and frequency of seizures, he did not discuss the number or frequency of attacks he believed were supported by the evidence. The ALJ also does not appear to discount the effect (as found by Dr. Smith) of the attacks (whether due to a seizure disorder or diabetes), yet does not appear to include these effects in determining Plaintiff's RFC and in his hypothetical to the VE. It is also impossible to determine from the opinion whether the ALJ considered all of the medical evidence in discounting Dr. Smith's February 2005 opinion.

### C.      **Credibility**

Plaintiff alleges that the ALJ failed to properly evaluate her credibility.   In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

In the RFC section of his opinion, the ALJ states that Plaintiff's allegation of being unable to perform any work activity is not credible due to significant inconsistencies in the evidence as a whole.  The ALJ, however, does not specify these inconsistencies.  He also states that Plaintiff's testimony that she experienced up to nine seizures per month was not credible and not supported by the objective medical evidence or treating notes of her physicians.  The Commissioner contends that the ALJ properly discounted Plaintiff's credibility because her credibility is not supported by her activities of daily living and her credibility is undermined by her non-compliance with medication. Although these reasons, if supported, may be applicable to the determination of credibility, they were

12

not given by the ALJ in discounting Plaintiff's credibility.  A defendant's post-hoc rationalization for the ALJ's credibility finding is generally inappropriate. See Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir.2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

**CONCLUSION**

The Commissioner's decision is not supported by substantial evidence.  This action should be remanded to the Commissioner to consider all of Plaintiff's impairments (including obesity and neuropathy and/or radiculopathy), determine her RFC in light of all of the evidence, properly evaluate her credibility, consider the opinion of Plaintiff's treating neurologist (Dr. Smith) in light of all the evidence, and continue the sequential evaluation process if necessary.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

_____
Joseph R. McCrorey
United States Magistrate Judge

February 18, 2009
Columbia, South Carolina

13